UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SYLVESTER JACKSON,

      Plaintiff,

  v.                                        Case No. 15-C-358

JON LITSCHER,
MICHAEL A. DITTMANN,
TAMMY MAASSEN,
MEREDITH MASHAK,
CO JOHNSTON,
CO MCKNIGHT,
CARLA GRIGGS, and
JOHN DOES 1–36,

      Defendants.

## DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Sylvester Jackson, a former Wisconsin Department of Corrections inmate, filed this 42 U.S.C. § 1983 action on March 31, 2015, alleging that the Department of Corrections' policy that permits correctional officers, rather than nurses and other medical professionals, to distribute medication to inmates at Columbia Correctional Institution (CCI) and Jackson Correctional Institution (JCI) violates his constitutional rights. His amended complaint names numerous individuals, known and unknown, who he claims are responsible for administering this policy. The court screened the complaint on May 21, 2015 and permitted Jackson to proceed with his sole claim that the defendants have shown deliberate indifference to inmates' serious medical need to receive the correct medications. This matter comes before the court on the defendants' motion for summary judgment. For the following reasons, the defendants' motion will be granted and the case dismissed.

**PRELIMINARY MATTERS**

Before turning to the parties' substantive arguments, the court will address two preliminary matters. First, the defendants assert that their proposed findings of fact must be deemed admitted because Jackson did not comply with the district court's local rules regarding summary judgment procedures. Pursuant to the local rules, along with the motion for summary judgment, the moving party is required to file either a statement of material facts to which the parties have stipulated or a statement of proposed material facts as to which the moving party contends there is no material issue and that entitle it to judgment as a matter of law. Civil L.R. 56(b)(1). The statement of proposed facts must include numbered paragraphs containing short factual statements and specific references to affidavits, declarations, parts of the record, and other supporting materials. Civil L.R. 56(b)(1)(C).

The party opposing the motion must file a response to the moving party's statement of undisputed facts which is intended to make clear which, if any, of those facts are in dispute, and to set forth any additional facts that bear on the motion. The opposing party's response must reproduce each numbered paragraph of the moving party's statement of facts followed by a response to each paragraph. Civil L.R. 56(b)(2)(B). If the fact is disputed, the party must include a specific reference to an affidavit, declaration, or other parts of the record that supports the claim that a genuine dispute exists as to the fact stated by the moving party. *Id.* If the opposing party believes there are additional facts that prevent the entry of summary judgment, he should include a statement, consisting of short numbered paragraphs that set forth each additional fact and include references to the affidavits, declarations, or other parts of the record that support the assertion. Civil L.R. 56(b)(2)(B)(ii).

In the instant case, Jackson filed a brief in opposition to the defendants' motion for summary judgment but did not file a response to their proposed findings of fact. Instead, Jackson cites to his amended complaint to support his assertions. However, nonmovants may not "rely on the mere allegations of their complaint to defeat summary judgment." *Westward Coach Mfg. Co. v. Ford Motor Co.*, 388 F.2d 627, 635 (7th Cir. 1968) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) ("To survive summary judgment, the nonmovant may not simply rely on the facts alleged in the complaint but must instead produce affirmative evidence."). In short, Jackson failed to comply with Civil L.R. 56. The Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010) (citing *Patterson v. Ind. Newspaper Inc.*, 589 F.3d 357, 360 (7th Cir. 2009)). Therefore, the court will deem the defendants' statement of facts admitted for the purposes of summary judgment.

In addition, Jackson listed Does 1 through 36 as defendants in this action. To date, he has not filed an amended complaint that provides the names of the Doe defendants. Because he has not identified the Doe defendants in a timely manner, his claims against them will be dismissed with prejudice. With these considerations in mind, the court now turns to the instant motion.

## BACKGROUND

Jackson was an inmate in the custody of the Wisconsin Department of Corrections until April 2017. Defs.' Proposed Findings of Fact (DPFOF) ¶ 1, ECF No. 56. While in custody, Jackson was housed at JCI from November 25, 2009 through February 20, 2013. *Id.* ¶ 2. He was then transferred to CCI where he was housed from March 26, 2013 through February 4, 2016. *Id.* ¶ 3.

3

He asserts that nurses, rather than correctional officers, should be responsible for distributing medication and alleges that the defendants have shown deliberate indifference to inmates' serious medical need to receive the correct medications from the institution.

While inmates may self-administer some medication as needed, it is Department of Corrections policy and practice at all Division of Adult Institutions (DIA), other than Taycheedah Correctional Institution, for correctional officers to deliver medications to inmates as part of their normal job duties. *Id.* ¶¶ 17, 26; *see also* DIA Policy No. 500.80.11, ECF No. 57-2. Individual institutions may adopt DIA 500.80.11 as written or implement additional procedures specific to that institution. *Id.* ¶ 18. Along with DIA Policy No. 500.80.11, each institution's inmate handbook explains that institution's medication delivery process. *Id.* ¶ 20. The handbook is provided to every inmate housed at the institution and is available in the institution's library. *Id.*

In accordance with DIA Policy No. 500.80.11, officers are responsible for dispensing and controlling psychotropic medications to document compliance and prevent an inmate from overdosing or selling the medication. Correctional officers receive training regarding medication delivery during their orientation and receive annual education on the process. *Id.* ¶ 25. When delivering medications, correctional officers compare the label on the blister pack with the inmate's "Medication Treatment Record," contained in the inmate's medical file, to verify the accuracy in identifying the correct inmate, medication, dose, time, and route. *Id.* ¶¶ 15, 31. Health Service Unit staff are responsible for ensuring that the Medication Treatment Record form and the medication labels match for each inmate. *Id.* ¶ 16. Accordingly, when there is a discrepancy between the medication label and the Medication Treatment Record, the correctional officer must contact the nurse in the Health Services Unit or the on-call nurse for direction before proceeding with delivery.

4

*Id.* ¶ 33. Once the correctional officer verifies that the medication label matches the Medication Treatment Record form, he must then show the medication label to the inmate to allow the inmate to verify the accuracy of the information. Health Services Unit staff are responsible for educating inmate patients with the names of their medications, the dose of their medications, the time they should take their medications, and the possible side effects of the medications so that they may ensure the accuracy of the medications they receive. *Id.* ¶ 14. Inmates only receive medication when both he and the correctional officer have verified that they are given the correct medication. *Id.* ¶ 32.

CCI has implemented DAI 500.80.11 as it is written, while JCI implemented its own facility procedure for medication distribution. *Id.* ¶ 34. JCI's Inmate Handbook indicates that an inmate must report to the Health Services Unit and present the correctional officer with his identification card and state his name, inmate number, and housing unit. The correctional officer then dispenses the medication into the inmate's hand. *Id.* ¶ 36. The inmate is required to check the medication prior to taking it and verify that he received the correct medication. *Id.*

In his amended complaint, Jackson alleges that he received the wrong medication from correctional officers tasked with medication distribution on at least three separate occasions at both CCI and JCI. First, on January 9, 2011, while housed at JCI, Officer Johnston gave him the medication of another inmate whose last name was also Jackson. Jackson informed Officer Johnston that he made an error and did not consume the other inmate's medication. *Id.* ¶ 13. On October 26, 2014, at CCI, Officer McKnight gave Jackson another inmate's medication. Jackson notified Officer McKnight that he received the wrong medication and did not consume this medication. The following day, an unknown officer gave Jackson the same medication Officer McKnight incorrectly

5

dispensed the day before. Jackson informed this officer of the mistake and did not consume the medication. *Id.*

## **LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of showing there are no facts to support the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "Material" means that the factual dispute must be outcome-determinative under the law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted).

**ANALYSIS**

As an initial matter, the defendants assert that the case is moot because Jackson is not entitled to injunctive relief. Jackson's claims for injunctive relief are moot because he has been released from prison. *See Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (finding claim for injunctive relief moot where plaintiff was no longer incarcerated); *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009). Jackson contends his claims are not moot because the Department of Corrections stipulated "for declaratory and injunctive relief purposes, that a favorable judgment for Mr. Jackson would apply to all DOC Correctional Institutions (max, medium and minimum) if the ruling is affirmed by the Seventh Circuit." ECF No. 64-1. Yet, this stipulation does not prevent Jackson's claims from becoming moot upon his release from prison. Accordingly, Jackson cannot proceed on a claim for injunctive relief.

In addition, the court notes that Jackson appears to have abandoned his claim that Dittmann, Maassen, Mashak, Johnston, McKnight, and Griggs were deliberately indifferent. There is nothing in his brief in opposition to the defendants' motion for summary judgment regarding his claims against these defendants. Therefore, summary judgment will be granted in their favor. The court will now address Jackson's Eighth Amendment claim against DOC Secretary Jon Litscher.

Jackson contends that Litscher is deliberately indifferent to his and other inmates' serious medical need to receive correct medication. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. Amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment.

*Id.* at 828; *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). In order to prevail on an inadequate medical care claim, a prisoner must establish that "the risk of harm to the prisoner is objectively serious and that the defendant was deliberately indifferent to the risk of harm as a subjective matter." *Flynn v. Doyle*, 672 F. Supp. 2d 858, 876 (E.D. Wis. 2009) (citing *Farmer*, 511 U.S. at 828). To succeed on a claim that the delivery of medication to inmates violates the Eighth Amendment on a systemic, institutional level, the plaintiff must show that "'there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care;'" or "'repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff'" creating an excessive risk of serious harm. *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983) (citations omitted).

Here, Jackson has not presented any evidence from which a factfinder could conclude that Litscher is deliberately indifferent to his or other inmates' medical needs. While Jackson asserts that allowing correctional officers to distribute or administer medications violates the constitutional protections of the Eighth Amendment, he has not only failed to present evidence demonstrating that there are "systemic and gross deficiencies" in the DOC's procedures, but also failed to even identify what those deficiencies are. Jackson does not deny that correctional officers receive medication delivery training upon hire and annually thereafter. The DOC has reduced the risk of incorrect medication distribution by implementing policies requiring that both the inmate and correctional officer verify that the inmate receives the proper medication. Although the defendants concede that Jackson mistakenly received the wrong medication on three occasions, these three isolated incidents at two separate facilities do not evince a pattern of conduct by prison staff that creates an excessive risk of serious harm. On a motion for summary judgment, it is the plaintiff's burden to present

8

evidence on each element of his claim; it is not the defendant's burden to disprove it. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013). Jackson has not met his burden here. Accordingly, summary judgment will be granted as to this claim.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (ECF No. 54) is **GRANTED**. The Clerk is directed to enter judgment dismissing the case with prejudice.

Dated this   15th   day of December, 2017.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
